### GIBSON v. LOWNDES.

1. Payments made by heirs or devisees on the bond of their deceased ancestor will not arrest the currency of the presumption of payment as against the estate of such ancestor.

2. No acknowledgment or admission by an executor or administrator will bind the real assets in the hands of the heir or devisee; and a payment by one who is named as executrix, but has not yet qualified, binds neither the estate of the testator nor his devisees.

3. The finding of the Circuit Judge that none of the payments on the bond of testator here in suit had been made by the nominated executrix, approved, such finding not being against the weight of the evidence.

4. Testator made his wife and two daughters his devisees, in equal proportions, and nominated his widow as executrix. Before proof of the will, and in ignorance thereof, a mortgage creditor of testator filed his bill against the widow and daughters, as heirs at law, for strict foreclosure, and a consent decree was passed ordering a sale of the mortgaged land (then supposed to be the only property of testator), and discharging defendants "from any liability for or by reason of the said bond." There was a deficiency on such sale reported by the officer of the court, and this report was confirmed by consent. *Held,* that these matters were not an admission by testator's estate, nor by his devisees, of any liability on this debt beyond the amount realised at such sale.

Before FRASER, J., Charleston, July, 1887.

This was an action by Sarah H. H. Gibson in her own right, and by D. H. Bacot, as trustee for Julia A. Bacot and her children, against Mary E. Lowndes, as executrix and in her own right, and others, instituted in Colleton County in October, 1886, and afterwards transferred by consent to Charleston County. The facts of the case and the exceptions are fully stated in the opinion of the court. The Circuit decree, omitting its statement, was as follows:

There are three grounds on which the defence in this case relies : 1. That the real estate described in the complaint has been *bona fide aliened* by the devisees before this action was brought. 2. That these lands cannot be subjected to the payment of this debt, because there was a clause in the decree made in an action by R. Dewar Bacot, executor, through whom plaintiffs claim, against these devisees to foreclose the mortgage above referred to, by which they were discharged from any further liability on account of the said bond. 3. That notwithstanding the credits which appear on the bond, it must be presumed to have been paid from lapse of time. I will consider these various defences in the order in which they have just been stated.

1. As to the alienation by the devisees.  It is not necessary to consider how far a married woman may mortgage her separate property, because there is no question of her rights, under the constitution, to *alien* her real estate, and a mere mortgage is no such alienation as will defeat the claims of creditors of an estate. A deed executed by these devisees to C. C. Pinckney has been set up in the answers and established by the evidence in the case. It has been drawn with great care and professional skill, and has been set up as an alienation of this real estate by the devisees.

Considering the terms of the deed itself, and the allegations in the answers of C. C. Pinckney and of these devisees, it seems to be nothing more than a conveyance to secure certain debts of these devisees to C. C. Pinckney, with a full *power* of appointment over any and all interests, which remains after paying what is due to C. C. Pinckney, vested in these devisees severally as to their original interests, each of one-third in the said land, and in default of execution of this power by them at their death to their heirs, executors, and administrators, respectively.  This power may be executed in favor of themselves, or of any other person, and as to so much of the interest in the real estate as the power may operate upon these devisees have received no value, which is the consideration of that deed.  It is true, that for their own use and benefit they have, under this power, mortgaged this interest to C. C. Pinckney, but by this deed, called here a *bona fide* alienation, an attempt was made which, if effectual, would have put so much of this property as was covered by this power not only beyond the reach of the creditors of the deceased, but beyond the reach of the creditors of these devisees themselves, including the claims of those creditors of the deceased who had their right of action at law against the devisees for the value of the real assets which came to their hands as devisees.  I do not see how such a transaction can, in any fair sense, be held to be a *bona fide* alienation; in the sense of 3 and 4 *W. & M.*  If by it the right of the creditors of a deceased person can be defeated, then the statute, 5 *Geo.* 2, *c.* 7, sec. 1983, *Gen. Stat.,* which makes real estate "liable to and chargeable with just debts," might as well be repealed.

2. As to the discharge contained in the decree of foreclosure

on June 14, 1876, an action was commenced in Colleton County by Bacot, executor, against Mrs. Lowndes, Mrs. Minott, and Mrs. Elliott, joining as defendants the husbands of the two latter, to foreclose the lien of the mortgage above referred to, given by W. H. Lowndes to secure the bond herein sued on. The mortgage covered a different tract of land from either of those described in the complaint in this case, and was no lien on them. The will of W. H. Lowndes had not then been admitted to probate, and there had been no administration on his estate. No one was made a party as personal representative, either as executor *de son tort* or otherwise. Mrs. Lowndes, Mrs. Minott, and Mrs. Elliott, who, as it now turns out, were devisees, were impleaded as heirs and distributees of W. H. Lowndes, deceased, a circumstance which cannot affect the case, as they took under the will precisely what they would have taken under the statute of distribution.

The purpose of the action was to foreclose the lien on the mortgaged premises, and the complaint contained no allegations which would have brought within its scope any claim against any other portions of the estate of W. H. Lowndes, either real or personal, or any claim against these devisees personally. On November 7, 1876, there was the usual decree of foreclosure and sale by consent, which decree, however, contained the following clause, on which this defence of a discharge is based : "And it is further ordered, adjudged, and decreed, that the defendants, the said Mary E. Lowndes, John C. Minott, and Harriott K., his wife, Henry D. Elliott, and Mary A., his wife, be, and they are hereby, discharged from any liability for or by reason of the said bond of the said William Henry Lowndes, deceased, set forth in the pleadings."

The proceedings subsequent to this decree will be referred to in considering another point raised in this case. It is sufficient for the present to say that in pursuance of this decree the land was sold, the proceeds of sale applied to the payment of the mortgage debt, leaving, according to the report of the sheriff, a large deficiency unpaid and unprovided for. There is conflict of testimony as to the circumstances under which this discharge was inserted in the consent decree of foreclosure. If we assume,

however, that the plaintiff in that case consented to it because of the statement, claimed to have been made by the counsel for the devisees in that case, that there was no other estate of W. H. Lowndes subject to the claim, it would not affect my judgment here.

It is admitted that there was no intentional misrepresentation made by the counsel for the devisees. The value of the property now sought to be subjected to this claim, and perhaps the existence of the property itself, seems to have been at the time unknown to all the parties, plaintiffs and defendants. It must have been intended on all sides to release something of some value, or the discharge was intended to be *vox et preterea nihil*, which I am not willing to attribute to these parties. I do not see how the discovery of an unknown value of a thing sold or given away can affect the title of the grantee in the absence of actual fraud. I have, however, other difficulties in reference to the discharge.

I find in section 271, *Freeman on Judgments*, *inter alia*, the following, which I think is a correct statement of principle: "The agreement of the litigants that matters *not in issue* may be given in evidence, and may be determined by the verdict of the jury, will not enlarge the effect of the judgment as an estoppel. * * * But if 'a decree in express terms purports to affirm a particular fact or rule of law, yet if such fact or rule of law was immaterial to the issue, and the controversy did not turn upon it, the decree will not conclude the parties in reference thereto.' " The most liberal construction of the pleadings in that case will not bring within their scope any question affecting the liability of these devisees personally, or the liability of any other portion of the estate, real or personal, for the payment of the *debt* secured by the mortgage in that case and set up by the plaintiffs in this action.

If this discharge is valid for any purpose, it must be confined to what its language plainly means, the personal liability of these devisees, and cannot extend to the liability of the estate of W. H. Lowndes. This action has been brought, not to enforce any personal liability for assets devised, or any new promise of these devisees to pay this bond, but to recover this bond debt out of the estate of the testator, W. H. Lowndes. So much for the dis-

charge as one of the provisions of a judgment. As an agreement between the parties it is fatally defective—*first*, for a want of consideration, and, *secondly*, because the presumed agency of counsel must be confined to the matters covered by the pleadings, and there is no evidence of any authority given by the plaintiff in that case to the attorneys to act in reference to any matter not covered by the pleadings—which referred alone to the foreclosure of the special lien of the mortgage therein set out.

3. As to the presumption of payment from lapse of time. As stated above, the presumption of payment commenced to run in the life-time of W. H. Lowndes on February 7, 1863, when the last payment was made by him. Has there been anything since that date to arrest it?

There appear on the bond various credits after that period and sufficient *prima facie* for that purpose. They are as follows:
*    *    *

The testimony of Mr. Bacot, the executor and agent, by whom all these credits on the bond were signed, and of Mrs. Lowndes, convinces me that none of these payments were made by Mrs. Lowndes, and that, in fact, she had no personal knowledge of their having been made by any one for her. It is not the payment itself which arrests the statute of limitations or the common law presumption of payment, but the inference to be drawn from the payment that the person making the payment then and there admitted that the debt was due and unpaid. As to all these payments, the testimony rebuts the presumption of any admission of the debt by Mrs. Lowndes, and there is no pretence that either Mrs. Minott or Mrs. Elliott were in any way personally connected with them. This remark does not apply to the last credit of $8,536, of which hereafter.

It would not affect the case if the payments were made out of the income or other funds of these parties, if, in fact, not made with their knowledge or consent. I am inclined to think, however, that the payments were made in part by the father of Mrs. Lowndes, in part out of his own means, and perhaps out of the proceeds of rents of the mortgaged premises above referred to. I am, therefore, of the opinion and hold, that none of these payments from January 24, 1867, to January 3, 1876, inclusive, are

sufficient admissions by the executrix, or by the devisees, if they were themselves the obligors on the bond sued on, to arrest the presumption of payment, and for a much stronger reason they are insufficient, when, if the presumption is arrested at all, it is against the estate as here claimed.

We come now to consider the effect of the credit of $8,536 arising from the sale of the mortgaged premises under the proceedings above referred to. The complaint in that case set out this bond as then due and unpaid, and was sworn to. The answers of these devisees were also sworn to, and admitted the facts stated in the complaint, and, amongst other things thus admitted, was the fact of the existence and non-payment of this bond.

The precise extent to which pleadings in one cause are evidence elsewhere of the facts stated in them seems to be somewhat unsettled. See 3 *Greenl. Evid.* (13th Am. Ed.), § 274, note 1, and authorities there cited. The whole record in that case has been offered in evidence, and it appears that after the application of the proceeds of the sale of the mortgaged premises there remained a balance on the bond unpaid and unprovided for of $6,002.22 on October 17, 1878. This fact appears in the report of the sheriff of that date, which on the same day was by consent of counsel for these devisees confirmed by the court. The judgment and proceedings in that case do not constitute an estoppel so far as to bind these parties absolutely, so that they cannot now show that they were mistaken and that the facts were otherwise. They are, however, sufficient as an admission until shown to be otherwise. They have in this respect all the force and effect of any private writing in which such a fact was stated on the one side and admitted on the other.

I would therefore hold that if these devisees were sued on their own bond, an admission made in this way would be sufficient to arrest the presumption, and it may be if they were sued at law for the value of real assets devised. Such, however, is not the case before the court. This action is against the estate, and this defence has been set up by the executrix, the devisees, and a creditor of the estate, C. C. Pinckney. Whatever may have been the effect of the subsequent qualification by Mrs. Lowndes as executrix on acts done by her as executrix, I do

not think that the admissions in these pleadings can bind the estate, or bind her as executrix, as in them she was not called on and did not act, or profess to act, as the personal representative of the deceased, W. H. Lowndes. An act done by an executor before probate may be valid after probate and qualification, but certainly it should be an act done, or claimed at the time to have been done, in the representative capacity. If, however, she had been then the qualified executrix, no admissions by her could bind the real estate. The rule, as I understand it to be in this State, is thus expressed in *Angel Lim.*, § 263 : "No previous acknowledgment or admission by an executor or administrator can affect the heir or devisee."

These alleged admissions may in some way affect the interest of these devisees in the land as intimated by the court in the case of *Bolt* v. *Dawkins*, 16 *S. C.*, 198, but it must be in some other way than in the mode in which this complaint seeks to make them liable. There the persons referred to were the heirs of the intestate, and one of them had been sued to judgment on the debt sued for as executor *de son tort*. The case of *Bolt* v. *Dawkins* is one involving the statute of limitations, and this one involves the common law presumption of payment. The principle which should control is the same.

With these views I have come to the conclusion that the bond sued on by the plaintiffs in the case now before the court has been barred by the presumption of payment, both as to the real and personal estate. It is therefore ordered and adjudged, that the complaint be dismissed.

*Messrs. McCrady, Sons & Bacot* and *Julius M. Bacot*, for appellants.

*Messrs. Mitchell & Smith, Hayne & Ficken*, and *Elliott & Howe*, contra.

March 24, 1888. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. In 1865 William Henry Lowndes died leaving a will, which, however, was not admitted to probate until 1883. His widow, Mary E., was named as his executrix,

and to her and his two daughters, Harriott K., now the wife of John C. Minott, and Mary A., now the wife of Henry D. Elliott, he devised his whole real estate in equal parts—one-third to each. The testator left no personal estate, and as the will disposed of the property precisely in accordance with the provisions of the statute of distributions, the will was not produced and probated. The testator was seized and possessed of several tracts of land, viz., three small tracts in Greenville and two in Colleton County, viz., one known as the "Hort tract," on Pon Pon River, and the other, containing 325 acres, on the Ashepoo River.

At the time of his death the testator owed debts, but it will only be necessary to notice two specialty debts, first, a bond to Henry Grimké, dated in 1847, for $3,375; and the other, a bond for $10,000, given on July 12, 1844, to one Charles E. Miller, who assigned it to Daniel Huger, and he disposed of it as a part of his estate, and in that way it came to the plaintiffs as trustees for Mrs. Julia A. Bacot. This contention has arisen out of the effort to collect this bond. For nearly twenty years the interest, which was due "annually," was paid by the deceased, William H. Lowndes, the last payment being on February 7, 1863, nearly two years before he died. After his death there are various credits on the bond, from January 26, 1867, to July 6, 1872, amounting in the aggregate to $5,100. Some of these credits are stated to be for money received from Roper & Stoney, Mrs. M. E. Lowndes, and H. A. Middleton, the father of Mrs. Lowndes.

The bond was originally secured by a mortgage of the "Ashepoo" tract of land, and in October, 1875, the then owner of the bond, R. Dewar Bacot, as executor of the will of Daniel Huger, instituted an action against Mrs. Lowndes and her two daughters as the "heirs at law" of the mortgagor, W. H. Lowndes, for a strict foreclosure of the mortgage, not making the representative of the estate a party (for there was none), nor asking for a decree for any balance of debt after applying the proceeds of the mortgaged tract of land. The defendants filed answers consenting, and also assented to a decree of foreclosure, which contained this paragraph: "And it is further ordered, adjudged, and

decreed, that the defendants, the said Mary E. Lowndes, John C. Minott, and Harriott K., his wife, Henry D. Elliott, and Mary A., his wife, be, and they are hereby, discharged from any liability for or by reason of the said bond of the said William Henry Lowndes, deceased, as set forth in the pleadings." The land was sold and purchased by the mortgagee for $9,000, and the receipt for this amount (less costs), with the rents for the years 1875 and 1876, amounted to $10,279, the receipt for which being more than the principal of the debt, was the last endorsed on the bond, and bearing date February 10, 1877, leaving unpaid a balance of $6,002.22.[1]

Matters remained in this condition until about May, 1882, when notice was given that the creditor proposed to sue for the above balance, and if some member of the family did not administer, the creditor would; whereupon Mrs. Lowndes had the will probated and qualified as executrix. On June 16, 1882, Mrs. M. E. Lowndes, Harriott K. Minott, and Mary A. Elliott executed what is called the deed of trust to C. C. Pinckney, jr., conveying to him the Greenville lots and the Pon Pon tract in Colleton County, in trust, to secure a debt to him as assignee, due by the estate of W. H. Lowndes (the Grimké bond), and certain debts to him by the parties, and then to be subject to certain conditions, powers, &c. (The deed is long, and printed in the Brief.) On March 8, 1883, Elliott and wife mortgaged to C. C. Pinckney all their interest in the Pon Pon place for $2,650, with interest. And in October, 1883, Mrs. Lowndes and Minott and wife mortgaged their interest in the Pon Pon place to C. C. Pinckney for a debt due by them to him. On March 4, 1884, C. C. Pinckney, as assignee, recovered judgment on the Grimké bond against Mrs. Lowndes, as executrix of W. H. Lowndes, but has not proceeded to enforce it.

This action was brought on October 15, 1886, against Mary E. Lowndes, as executrix, and as devisee along with her daughters, Mrs. Minott and Mrs. Elliott, in the form of a creditor's bill to obtain judgment on the balance of the Huger bond and to marshal the assets of the estate of the testator, Lowndes, &c.;

---

[1] This deficiency was reported to the court, and this report was confirmed by a consent order.—REPORTER.

but with the additional aspect of establishing the debt against the
devisees and making the lands devised to them liable to pay the
debt of the ancestor under the statute, and in that view to reform
the consent decree in the foreclosure suit, or cancel the para-
graph discharging the defendants from any liability for the bal-
ance of the bond, and to enjoin C. C. Pinckney from proceed-
ing to enforce his execution against the executrix, &c., &c.  The
defendants made vigorous defences, insisting upon three grounds :
(1) That notwithstanding the credits which appear upon the
bond, the balance on it must be presumed to have been paid from
lapse of time.   (2) That these devised lands cannot be subjected
to the payment of the balance on the bond, because there was a
clause in the foreclosure decree by consent to sell the Ashepoo
land, discharging the devisees from any further liability on account
of that bond.   (3) That the real estate described in the com-
plaint, the Greenville parcels, and the Pon Pon tract in Colleton,
devised to Mrs. Lowndes and her daughters, were *bona fide*
aliened to C. C. Pinckney by the devisees before action brought.

The testimony (largely records, deeds, &c.) was taken by mas-
ter Sass, and the cause coming on for a hearing by Judge Fraser,
he held that the trust deed and mortgages executed by the
devisees to C. C. Pinckney did not constitute a *bona fide* aliena-
tion in the sense of the statute of 3 and 4 *W. & M.*, and of 5 *Geo.*
II. (chapter 70, and section 1983 of General Statutes), that the
discharge in the foreclosure decree in Colleton could not be said
to be absolutely without consideration, but that portion of the
consent decree as to the discharge was in reference to a matter
not within the issues of the case, and therefore the discharge
could not in its scope reach beyond "the personal liability of the
devisees and extend to the liability of the estate of W. H.
Lowndes."   But he sustained the defence of presumption of
payment, holding that none of the payments, after the death of
Mr. Lowndes down to January 3, 1876, "were made by Mrs.
Lowndes, and that, in fact, she had no personal knowledge of
their having been made by any one for her.   *   *   *   As to
these payments the evidence rebuts the presumption of any ad-
mission of the debt by Mrs. Lowndes, and there is no pretence
that either Mrs. Minott or Mrs. Elliott were in any way person-

ally connected with them." As to the answers of the devisees, sued as heirs at law in the foreclosure proceeding, and the payment therein made from the sale of the land by order of court, he held that the record must be considered to have the force of a private writing, and if offered in a suit upon their own bond, "might be sufficient to arrest the presumption, or it may be, if they were sued at law for the value of real assets descended. Such, however, is not the case before the court," &c.  He held that the bond sued on by the plaintiffs was barred by the presumption of payment, both as to the real and personal estate, and dismissed the complaint.

. From this decree the plaintiffs appeal on the following exceptions:

"1. Because his honor is in error in that he finds as follows: 'C. C. Pinckney, another defendant, is a creditor of the estate, having purchased a bond executed by W. H. Lowndes, and he is also one of the creditors of these devisees, and has other claims against the real estate, as will hereafter appear.'

"2. Because his honor erred in that he finds as follows : 'That none of these payments were made by Mrs. Lowndes, and that, in fact, she had no personal knowledge of their having been made by any one for her.'

"3. Because his honor erred in that he finds as follows: 'As to all these payments the testimony rebuts the presumption of any admission of the debt by Mrs. Lowndes, and there is no pretence that either Mrs. Minott or Mrs. Elliott were in any way personally connected with them.'

"4. Because his honor is in error in that he finds as follows : 'It would not affect the case if the payments were made out of the income or other funds of the parties, if, in fact, not made with their knowledge and consent.'

"5. Because his honor is in error in that he finds as follows : 'I am inclined to think, however, that the payments were made in part by the father of Mrs. Lowndes, in part out of his own means, and perhaps out of the proceeds of rents of the mortgaged property above referred to.'

"6. Because his honor is in error in that he finds as follows: 'I am therefore of the opinion, and hold, that none of these pay-

ments from January 24, 1867, to January 3, 1876, inclusive, are sufficient admissions by the executrix, or by the devisees, if they were themselves the obligors on the bond sued on, to arrest the presumption of payment, and for a much stronger reason they are insufficient when, if the presumption is arrested at all, it is against the estate as here claimed.'

"7. Because his honor is in error in that he finds as follows: 'I do not think that the admissions in these pleadings can bind the estate or bind her as executrix, as in them she was not called on and did not act, or profess to act, as the personal representative of W. H. Lowndes. An act done by an executor before probate may be valid after probate and qualification, but certainly it should be an act done, or claimed at the time to have been done, in the representative capacity.'

"8. Because his honor is in error in that he finds as follows: 'That the bond sued on by the plaintiffs in the case now before the court has been barred by the presumption of payment, both as to the real and personal estate.'

"9. Because his honor is in error in that he is of the opinion that in such an action as this devisees, as such, cannot be answerable or chargeable for the debts of their testator to the value of lands devised to and aliened by them.

"10. Because his honor is in error in adjudging as follows: 'It is therefore ordered and adjudged, that the complaint be dismissed.'"

Respondents also filed additional grounds on which, in case the court should find itself unable to sustain the judgment on the Circuit upon the grounds stated, the judgment below should be sustained. Mrs. Lowndes, her two daughters, and C. C. Pinckney, each filed additional grounds. They are all in the Brief, but are long, and being on the same general subject, we think it only necessary to set out those of Mrs. Lowndes:

"First. That the decree in the suit in Colleton County in 1876 to foreclose the mortgage on the Ashepoo plantation, mentioned in the pleadings, made by consent of the parties thereto, having been executed, is an accord and satisfaction of the bond set forth in the pleadings, and a bar to any further proceedings thereon.

"Second. That the evidence herein established the fact that Bacot, executor, the plaintiff in the said former action in 1876, authorized his attorneys to consent to said decree, or subsequently ratified their act and accepted the advantages secured him by the decree. But in any case the action of his attorneys in consenting to the decree and his acceptance thereof binds him, and if he did not really consent, his remedy is against his counsel; and the plaintiffs herein, if they have been wrongfully prejudiced, have their remedy against Bacot, executor.

"Third. The consent decree aforesaid is absolutely conclusive until vacated and set aside, and cannot be collaterally assailed or impeached in this action.

"Fourth. That immediately upon the death of the said W. H. Lowndes, the lands described in the complaint herein descended to and vested in this defendant and her co-defendants, Harriott K. Minott and Mary A. Elliott, subject only to the payment of the bonds set forth in the pleading; and these defendants having been discharged from further liability for or by reason of the bond sued on, they cannot be divested of any interest they may now have in said lands by the sale of the same for the payment of said bond.

"Fifth. The answers and consent decree of this defendant, or her co-defendants, in the former suit in 1876 by Bacot, executor, against them as heirs of the said W. H. Lowndes, are not complete evidence to establish that the estate of Lowndes, or any of these defendants, were liable for the bond sued on, their consent to the decree in that case being given only upon condition of their discharge from any further liability upon said bond. Said defendants, in effect, denied plaintiffs' right to the relief prayed. The whole transaction cannot be considered in any other light than a denial by defendants to plaintiffs' right to a decree confirming the report of the referee. To purchase quiet said defendants were willing to turn over to plaintiffs the proceeds of the Ashepoo plantation, or so much thereof as might be required to pay in full the amount claimed by plaintiffs to be due, and thus put an end to all possible future claims by plaintiffs against these defendants for or by reason of said bond. Plaintiff on his part released a right claimed by him, in consideration of defendants'

consenting to the decree, and defendants accepted this release. The acceptance of a release of a right claimed is no acknowledgment that the right existed. If the consideration given for the release was less than the right claimed, this is evidence of a denial rather than an admission of the existence of a right," &c.

There is some confusion in this case, arising principally from the fact that for seventeen years after the death of W. H. Lowndes his will was not probated, and the estate was considered as intestate; and the further fact that when, in 1883, Mrs. Lowndes qualified, she stood in the double capacity of executrix and one of the devisees with her daughters. The action is in form a creditor's bill to establish a debt and marshal the assets of the estate of W. H. Lowndes, and incidentally against the heirs and devisees, to make lands in their possession liable for the ancestor's debt under the statute of W. & M. It was brought in October, 1886, for the balance of a bond, forty years after its execution—twenty-three years after the last payment on it by the obligor (1863); and twenty-one years after his death (1865). Under these circumstances it is perfectly clear that the bond was paid by the presumption from lapse of time when the action was brought, unless something occurred after the death of the obligor to arrest the presumption.

The plaintiffs do claim that, after the death of the obligor, certain payments and the proceeds of the Ashepoo land mortgaged to secure the debt were made and credited on the bond, and having been made by or through the authority of the devisees, then acting as "heirs," the effect was to admit a continuing liability on the bond, and to push up to the time of these payments the period from which the presumption began to run—that it gave a new starting point, and therefore the debt is not paid, and "the balance" is still a subsisting liability, both against the executrix, as representing the estate, and the devisees. The plaintiffs rest their right to recover upon being able to take the case out of the presumption of payment. The tendency is to return to a more strict enforcement of the statute of limitations, and the presumption of payment from lapse of time. See *Angel on Limitations.* The recognized principle, even as to payments of an obligor on his own debt, is that the payment which will arrest

the statute or presumption of payment "must be made under circumstances to warrant a finding as matter of fact, that the debtor intended to recognize the debt in question as subsisting, and which he is willing to pay."

The credits relied upon for the purpose stated may be divided into two classes—first, the payments purporting to be made by certain individuals named from January, 1867, to July, 1872; and, second, the proceeds of the mortgaged premises in 1877, and the rents thereof for the two previous years of 1875 and 1876. Then, as to the first class, there is a question of fact as to whether they were made or authorized by the devisees, or any of them, of which we will speak hereafter. But for the present let us assume that they were made by authority of the devisees or "heirs," as then supposed to be; would that arrest the presumption of payment running against the debt of a dead man? We do not think so. The case of *Bolt* v. *Dawkins* (16 *S. C.*, 198) was entirely analagous to this in respect to what will arrest the statute as to the debt of one deceased; and it was there held "that admissions and promises of intestate's heirs, who, without letters of administration, are managing his estate, do not continue or revive the indebtedness of the intestate."

In delivering the judgment of the court, Mr. Justice McIver said: "It is contended that the bar of the statute (like presumption of payment) is prevented by the admissions, promises, and payments made by the heirs of the intestate while in possession of his land. * * * We do not think they could have the effect of reviving or continuing the legal obligation which the intestate incurred when he executed the note. The persons who made these admissions, promises, and payments, did not stand in such a relation to the intestate as so entitle them either to create, revive, or continue an obligation of the intestate. They did not represent the intestate, and nothing that they said or did can be allowed to have the effect of fixing a debt upon the estate. * * * The fact that they were heirs of the intestate cannot affect the question, for as such they have no more authority to create or revive a debt against their ancestor than any other person would have." We think devisees are in the same condition.

But it is strongly urged that here the widow and children were

something more than "heirs" or devisees—that one of them, Mrs. Lowndes, was executrix, and as such had the right to continue by admissions the debt of the testator, and the devisees being jointly bound as obligors, the act of the executrix had the effect of prolonging the existence of the debt, not only against herself as executrix, but also against the devisees. Without stopping to inquire whether a payment by an executor upon the bond of his testator will *ipso facto* arrest the presumption of payment (see *Knox* v. *McCall's Administrator*, 1 *Brev.*, 531), it may be enough to say that "no acknowledgment or admission by an executor or administrator will bind the real assets in the hands of the heir or devisee." As Chancellor Kent significantly asks: "Is the heir to be charged at the pleasure of the executor with the debts of the ancestor? Does it rest entirely in the discretion of the executor whether the heir is or is not to be permitted to use the statute of limitations?" &c. *Angel Lim.*, § 263; *Mooers* v. *White*, 6 *Johns. Ch.*, 373; *Gregory* v. *Rhoden*, 24 *S. C.*, 98.

Besides, at the time of the transaction relied on, Mrs. Lowndes had not qualified as executrix, which did not take place until long afterwards (1883). At that time she, with her daughters, were acting only as devisees or "heirs"; and, as we have seen, in that capacity could do nothing that would arrest the presumption. It is true, she was named as executrix in the unproved will, but she had not been commissioned. We have no doubt that one named as executor may do certain things in advance of his receiving letters testamentary which will bind him afterwards; but it does not strike us that his commission will be considered as retroactive, merely for the purpose of giving effect to alleged admissions, which could only be made in the character of executor. Transactions, from which are to be inferred admissions, affecting the estate, surely can only be attributed to one who was at the time the legal representative of the estate. "The admissions, therefore, of a guardian or of an executor or administrator made before he was completely clothed with that trust, or of a *prochein ami*, made before the commencement of the suit, cannot be received either against the ward or infant in the one case, or against himself, as the representative of heirs, devisees,

and creditors in the other, though it may bind the person himself, when he is afterwards a party *suo jure* in another action."
1 *Greenl. Evid.*, § 179.

But, in addition to this, in reference to these receipts the Circuit Judge found as matter of fact, "that none of these payments were made by Mrs. Lowndes, and that, in fact, she had no personal knowledge of their having been paid by any one for her," and "as to these payments the testimony rebuts the presumption of any admission of a debt by Mrs. Lowndes, and there is no pretence that either Mrs. Minott or Mrs. Elliott were in any way personally connected with them," &c. The rule of this court is very well known, that it will not disturb a finding of fact by the Circuit Court, unless it is manifestly against the weight of the evidence. Some such rule is absolutely necessary, as it is important that there should be an end of litigation. We have read the testimony carefully. Some of the credits state that the payments were made by Mrs. Lowndes, but beyond that there was no positive proof that she personally made them. She denied that she had done so, and being a lady not accustomed to such business, if she had done so, she would probably have remembered it. On the other hand, it was very natural, when a payment was received, for the person having charge of the bond to give the credit to Mrs. Lowndes, who had no brother or son, and was the head of the family of her deceased husband. We cannot say that the finding of the Circuit Judge was against the weight of the evidence.

Then as to the proceeds of the sale and the rents of the Ashepoo plantation. This seems to have been considered a valuable rice plantation and was mortgaged to secure this bond at the time it was executed. About 1874 or 1875 Mrs. Lowndes and her daughters, probably finding that they could not pay the bond with its ever recurring "annual interest," proposed to surrender the plantation in full discharge of the debt, and this being declined, they nevertheless surrendered it, and in 1876, or about that time, consented to a strict foreclosure of the mortgage—the plaintiff praying for nothing more than the sale of the land. There was a consent decree of foreclosure and the land was sold and the proceeds and the rents, as aforesaid, credited on the bond.

It does not seem to us that this was a voluntary payment, and made under such circumstances "as to warrant a finding as matter of fact, that the debtor recognized the debt as subsisting, and which he was willing to pay." Mr. Lowndes, at his death, left Ashepoo incumbered with this mortgage; the sale of it could not be resisted, and the turning over the proceeds was substantially a payment by operation of law.

It is true that Mrs. Lowndes and her daughters answered, consenting to the prayer of the complaint, which, however, only prayed for a sale of the land. They asked also that the amount due on the bond, with its numerous credits, might be accurately ascertained. But there was in the consent decree a paragraph which provided and adjudged that Mrs. Lowndes and her daughters "be, and they are hereby, discharged from any liability for or by reason of the said bond." This provision may not be a matter "adjudicated," or an enforcible agreement, but upon the question of intent at the time, it is very significant indeed. We think the whole record should be considered together, and so considered, that it affords no evidence whatever that Mrs. Lowndes and her daughters recognized and intended to pay any balance that might remain unpaid after applying the proceeds of the sale to the bond; but, on the contrary, that it shows the very opposite—that they considered themselves discharged from further liability, and it was not their intention by such enforced payment to recognize or pay any balance that might remain on the bond.

This makes it unnecessary to consider the other defences.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.